CASE NO. 22-5107

IN THE UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

| | |
|---|---|
| CHARLES CLINE, | ) |
| | ) |
| Plaintiff - Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| CLINICAL PERFUSION | ) |
| SYSTEMS, INC., | ) |
| | ) |
| Defendant – Appellee. | ) |

---

On appeal from the United States District Court
for the Northern District of Oklahoma
The Honorable Judge Claire V. Eagan
D. C. No. 4:22-cv-00314-CVE-CDL

---

**APPELLANT'S OPENING BRIEF**

---

Donald M. Bingham, OBA #794
RIGGS, ABNEY, NEAL, TURPEN, ORBISON &
LEWIS
502 W. 6th St.
Tulsa, OK 74119
Telephone: (918) 587-3161
Facsimile: (918) 587-9708
don_bingham@riggsabney.com
ATTORNEY FOR PLAINTIFF – APPELLANT

Oral Argument is Requested

SCANNED PDF FORMAT ATTACHMENTS ARE INCLUDED

Date: January 23, 2023

# TABLE OF CONTENTS

ATTACHMENTS ......................................................................................... iii

      Exhibit 1:   Cline v. Clinical Perfusion Systems, Inc.,
                   Opinion and Order (October 28, 2022)........................................4

      Exhibit 2:   Cline v. Clinical Perfusion Systems, Inc.,
                   Judgment of Dismissal (October 28, 2022) ...........................2, 4

TABLE OF AUTHORITIES ................................................................ iv-vii

PRIOR OR RELATED APPEALS ......................................................... vii

GLOSSARY ......................................................................................... viii

STATEMENT OF JURISDICTION.............................................................1

STATEMENT OF THE ISSUES..................................................................2

STATEMENT OF THE CASE......................................................................2

STATEMENT OF THE FACTS ...................................................................4

SUMMARY OF THE ARGUMENTS .........................................................9

ARGUMENT ............................................................................................11

      Standard of Review........................................................................11

Disability Discrimination.........................................................................12

      Fed.R.Civ.P. 8(d) authorizes Cline to plead inconsistent
      facts about the expected duration of his impairment....................12

Age Discrimination ..................................................................................20

The district court erred in foreclosing Cline from
maintaining an age-discrimination claim as an alternative to his
disability-discrimination claim, and in finding that his age-related
factual allegations are insufficient to state a plausible claim ........................20

CONCLUSION ....................................................................................24

STATEMENT OF COUNSEL AS TO ORAL ARGUMENT ................................25

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT..................26

ATTACHMENTS

Exhibit 1:    Cline v. Clinical Perfusion Systems, Inc.,
              Opinion and Order (October 28, 2022)................................................4

Exhibit 2:    Cline v. Clinical Perfusion Systems, Inc.,
              Judgment of Dismissal (October 28, 2022).......................................2, 4

# TABLE OF AUTHORITIES

## Cases

Ashcroft v. Iqbal,
    556 U.S. 662, 679 (2009) .............................................................15

Adair v. City of Muskogee,
    823 F.3d 1297, 1307 (10th Cir. 2016) ..........................................13

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544, 555 (2007) .......................................................15, 18

Bennett v. Windstream Communications, Inc.,
    792 F. 3d 1261, 1269 (10th Cir. 2015) .........................................20

Boykin v. ATC/VanCom of Colo., L.P.,
    247 F.3d 1061, 1064-1065 (10th Cir. 2001)..................................15

Bruce v. Kelly,
    2021 U.S. Dist. LEXIS 179379, * 71 n. 8 (D. Kan. September 21, 2021) ...17

Burke v. Holdman,
    750 Fed. Appx. 616 (10th Cir. 2018) ...........................................18

Cella v. Mobichord, Inc.,
    2020 U.S. Dist. LEXIS 13983, * 28 (D. Utah January 27, 2020) ................17

Champlin v. Oklahoma Furniture Mfg. Co.,
    324 F.2d 74, 76 (10th Cir. 1963) ..................................................18

Cohon ex rel. Bass v. New Mexico,
    646 F.3d 717, 725 (10th Cir. 2011) ..............................................12

Dean v. Wright Medical Technology, Inc.,
    593 F. Supp. 3d 1086, 1102 (D. Colo. 2022) ...............................17

Doe v. BlueCross BlueShield of Tennessee, Inc.,
    926 F.3d 235, 239 (6th Cir. 2019) ................................................14

Escano v. RCI LLC,
    2023 U.S. Dist. LEXIS 1450 (D.N.M. January 4, 2023) ...............................17

Escano v. RCI LLC,
2022 U.S. Dist. LEXIS 213384, * 23 (D.N.M. November 28, 2022) ....................17

Francois v. Our Lady of the Lake Hosp., Inc.,
    8 F.4th 370, 378 (5th Cir. 2021) ....................................................................14

Frappied v. Affinity Gaming Black Hawk, LLC,
    966 F.3d 1038, 1056 (10th Cir. 2020) ...........................................................24

Hwang v. Kansas State Univ.,
    753 F.3d 1159, 1161 (10th Cir. 2014) ......................................................13, 16

Johnson v. Reyna,
    ___ F.4th ___, 2023 U.S. App. LEXIS 605, * 8
    (10th Cir. January 11, 2023) ..........................................................................11

Kikumura v. Osagie,
    461 F.3d 1269, 1296 (10th Cir. 2006) ...........................................................18

Miller v. Eby Realty Group LLC,
    396 F.3d 1105, 1111 (10th Cir. 2005) ...........................................................23

Mueggenborg v. Nortek Air Solutions, LLC,
    2021 U.S. App. LEXIS 30860, * 5 (10th Cir. October 15, 2021)................24

Robert v. Bd. of County Comm'rs,
    691 F.3d 1211, 1218 (10th Cir. 2012) ...........................................................15

Smith v. Cashland, Inc.,
    193 F.3d 1158 (10th Cir. 1999) ....................................................................18

Stroup v. United Airlines, Inc.
    26 F.4th 1147, 1159-1162 (10th Cir. 2022)...................................................23

Sylvia v. Wisler,
    875 F.3d 1307, 1321 (10th Cir. 2017) ...........................................................21

United States v. Roe,
   913 F.3d 1285, 1300 n. 21 (10th Cir. 2019) ....................................17

Wilkerson v. Shinseki,
   606 F.3d 1256, 1263 (10th Cir. 2010) .........................................13

## Statutes

25 O.S. §§ 1101-1350 ........................................................ viii, 1, 20

25 O.S. § 1301(4) ..................................................................15

25 O.S. § 1302(A)(1) .......................................................3, 14, 20

28 U.S.C. § 1291 ....................................................................2

28 U.S.C. § 1331 ....................................................................1

28 U.S.C. § 1332(a)(1) ...........................................................1

28 U.S.C. § 1367(a) ...............................................................1

29 U.S.C. § 794 ............................................................. viii, 3

42 U.S.C. § 12102(1) ............................................................13

42 U.S.C. § 12102(3)(B) ........................................................13

42 U.S.C. § 18116 ...........................................................3, 14

42 U.S.C. § 18116(a) ............................................................14

## Other

Fed.R.Civ.P. 8(d) ..................................................................12

Fed.R.Civ.P. 8(d)(2)-(3)....................................................10, 21

Fed.R.Civ.P. 12(b)(3)......................................................................................3

Fed.R.Civ.P. 12(b)(6)..............................................................................3, 4, 11

Fed.R.App.P. 4(a)(1)(A) ...............................................................................2

## PRIOR OR RELATED APPEALS

None.

# GLOSSARY

"ACA" or "Affordable Care Act" means the Patient Protection and Affordable Care Act, 42 U.S.C. § 1800 *et seq.*

"ADA" means the Americans with Disabilities Act,
    42 U.S.C. §§ 12101 – 12213.

"ADEA" means the Age Discrimination in Employment Act, 29 U.S.C. § 623.

"App." means Charles Cline's Appendix, filed simultaneously herewith. His Appendix has only one volume.

"OADA" means the Oklahoma Anti-Discrimination Act, 25 O.S. §§ 1101-1350.

"Rehabilitation Act" means the Rehabilitation Act of 1973, 29 U.S.C. § 794.

The undersigned counsel, Donald M. Bingham, on behalf of Charles Cline, plaintiff-appellant ("Cline"), for his opening brief states:

## STATEMENT OF JURISDICTION

The United States District Court for the Northern District of Oklahoma had jurisdiction over this matter pursuant to 28 U.S.C. § 1331. Cline brought claims against defendant-appellee Clinical Perfusion Systems, Inc. ("Employer") under the Rehabilitation Act of 1973 ("the Rehabilitation Act") and the Patient Protection and Affordable Care Act ("the ACA"). App. at 7 ¶ 11.[1]

The district court also had jurisdiction under 28 U.S.C. § 1332(a)(1). The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. App. at 7 ¶ 10. Cline is a citizen of California, App. at 6 ¶ 6, and Employer is a citizen of Oklahoma. App. at 6 ¶ 7. Cline also brought claims against Employer's owners, Kevin Esau and Tyler McKeon, both of whom are citizens of Oklahoma. App. at 6 ¶ 8, 7 ¶ 9. Cline does not appeal from the district court's dismissal of his claims against Esau and McKeon.

Pursuant to 28 U.S.C. § 1367(a), the district court had supplemental jurisdiction over Cline's claims under the Oklahoma Anti-Discrimination Act ("OADA"), 25 O.S. §§ 1101-1350, because those claims are so related to Cline's

---

[1] In this brief, "App." is Cline's reference to his Appendix, filed simultaneously herewith. Cline's Appendix has only one volume. Paragraph symbols refer to numbered paragraphs of the amended complaint. App. at 6-27.

1

claims under the above-cited federal statutes that they form part of the same case or controversy under Article III of the United States Constitution.

The district court entered a Judgment of Dismissal on October 28, 2022. App. at 4, 151. The Judgment of Dismissal is final, and disposes of all parties' claims. *See, also,* attached "Exhibit 2" (copy of Judgment of Dismissal).

Cline's notice of appeal was timely filed in accordance with Fed.R.App.P. 4(a)(1)(A), on November 23, 2022. App. at 4, 152. Because the Judgment of Dismissal is final, this court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

IN HOLDING THAT CLINE FAILED TO STATE A PLAUSIBLE CLAIM FOR DISABILITY-DISCRIMINATION, THE DISTRICT COURT ERRED IN DECLINING TO CONSIDER CERTAIN ALLEGATIONS OF FACT THAT ARE INCONSISTENT WITH OTHER FACTUAL ALLEGATIONS.

IN HOLDING THAT CLINE FAILED TO STATE A PLAUSIBLE CLAIM FOR AGE-DISCRIMINATION, THE DISTRICT COURT ERRED IN DECLINING TO CONSIDER AGE-DISCRIMINATION AS AN ALTERNATIVE THEORY OF LIABILITY, AND IN FINDING ALTERNATIVELY THAT CLINE'S FACTUAL ALLEGATIONS ARE INSUFFICIENT TO SUPPORT AN INFERENCE THAT AGE WAS THE DETERMINATIVE FACTOR IN HIS TERMINATION.

(The amended complaint also asserts a breach-of-contract claim against Employer, but Cline does not appeal from the district court's dismissal of that claim.)

## STATEMENT OF THE CASE

In the amended complaint, Cline alleges that Employer terminated his employment because of his disability or age. Specifically, Cline alleges that

Employer's decision to discharge him was made because of his disability, in violation of the Rehabilitation Act, 29 U.S.C. § 794(a), the Affordable Care Act, 42 U.S.C. § 18116, and the disability-discrimination provisions of the Oklahoma Anti-Discrimination Act ("OADA"), 25 O.S. § 1302(A)(1), App. at 11 ¶¶ 34-38, 12 ¶¶ 39-42, 13 ¶¶ 43-45, 14 ¶¶ 46-49, 15 ¶¶ 50-51, 17 ¶¶ 63-64, 18 ¶¶ 65-69, 19 ¶ 70, 6 ¶ 5, 15 ¶¶ 52-55, 16 ¶¶ 56-69, 17 ¶¶ 60-62, or because of his age (61), in violation of the age-discrimination provisions of the OADA, 25 O.S. § 1302 (A)(1), App. at 6 ¶ 5, 15 ¶¶ 52-55, 16 ¶¶ 56-59, 17 ¶¶ 60-62.

Employer moved to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) and Fed.R.Civ.P. 12(b)(3). App. at 28-55. The district court noted that Employer's brief addressed only failure to state a claim under Rule 12(b)(6), and not improper venue under Rule 12(b)(3). Accordingly, the district court considered Employer's motion under only Rule 12(b)(6). App. at 129 n. 2.

In its motion to dismiss, Employer argued that Cline had failed to state a plausible claim for relief under the Rehabilitation Act, the Affordable Care Act, and the disability-discrimination provisions of the OADA, and that Cline had failed to state a plausible claim for relief under the age-discrimination provisions of the OADA. App. at 34-41. Employer's motion to dismiss also opposed the other claims asserted by Cline that are no longer at issue.

Employer's Rule 12(b)(6) motion was fully briefed, and on October 28, 2022, the district court issued an Opinion and Order granting Employer's motion and dismissing Cline's claims against all defendants for failure to state a claim upon which relief can be granted. App. at 128-150. *See, also,* attached "Exhibit 1" (copy of Opinion and Order). On the same date, the district court entered a Judgment of Dismissal. App. at 4, 151. Exhibit 2.

Cline brings this appeal against Employer only, and requests oral argument.

## STATEMENT OF THE FACTS

The following facts are alleged in the amended complaint: Cline is a perfusionist, which is a licensed medical professional who is a member of a cardiovascular surgical team. Perfusionists operate heart-lung machines, and during surgery they maintain blood flow to the patient's tissues and regulate levels of oxygen and carbon dioxide in the blood. App. at 7 ¶ 19, 8 ¶ 21. In 2017, Employer hired Cline, who had 25 years of experience as a perfusionist. App. at 8 ¶ 21. Throughout Cline's employment with Employer, he was an exemplary employee and a respected perfusionist with a strong work ethic. App. at 8 ¶ 21.

When Cline was terminated, Employer was a program or activity receiving federal financial assistance and was a corporation to which such assistance was extended. App. at 13 ¶¶ 43-45, 14 ¶ 46.

On March 27, 2021, Cline was driving in Tulsa and, while stopped at a traffic light, he lost consciousness. Cline passed out due to a sudden onset of hypotension. App. at 8 ¶ 22. Emergency medical personnel came to the scene, performed cardiopulmonary resuscitation on Cline, and intubated him for transportation to Saint Francis Hospital in Tulsa, where he was immediately placed into the Intensive Care Unit ("ICU"). App. at 8 ¶ 23. As the result of the intubation, Cline suffered profound damage to his throat, which necessitated treatment in ICU from March 27, 2021, until May 3, 2021, followed by in-patient rehabilitation at a separate facility until June 11, 2021, when he was discharged to home. App. at 8 ¶ 23.

During his stay in ICU, Cline was heavily sedated and slept up to twenty (20) hours a day. App. at 8-9 ¶ 24. Due to a tracheostomy and the condition of his throat, kidneys, and other organs, Cline could not speak or care for himself. App. at 8-9 ¶ 24.

The owners of Employer, Kevin Esau and Tyler McKeon, observed Cline in ICU, and talked on occasion with Cline's wife, Nicole Pardini. App. at 8 ¶ 20, 9 ¶¶ 25-26. Unbeknownst to Cline or Ms. Pardini, Esau and McKeon were considering whether to terminate his employment. App. at 9 ¶ 25.

On May 3, 2021, Esau and McKeon disclosed to Ms. Pardini in a telephone call that Cline was being terminated. App. at 9 ¶ 26. Esau and McKeon falsely

attributed their decision to the financial condition of Employer. App. at 9 ¶ 26. Ms.

Pardini was shocked, and she asked them whether they would agree to hold Cline's

job open until he recovered. Esau and McKeon declined her request. App. at 9 ¶

26.

On July 28, 2021, Cline's attending physician – a cardiovascular surgeon –

released Cline to return to work as a perfusionist on a full-time basis without

restriction. App. at 10 ¶ 29. Shortly after Cline had been released to return to work,

he asked McKeon for reinstatement. Cline offered to work at a lesser position, but

McKeon declined his request. App. at 10 ¶ 30.

Prior to making the decision to discharge Cline, Employer made no attempt

to initiate or participate in an interactive process with Cline or Ms. Pardini, and

made no effort to determine whether there was a reasonable accommodation

available as an alternative to termination. App. at 12 ¶ 42, 14-15 ¶¶ 48-49.

Employer terminated Cline's employment because of his record of

disability, because it regarded him as having a disability, or because he did have

physical limitations that limited one or more major life activities (*e.g.* the activity

of working). App. at 15-16 ¶ 49, 15 ¶ 50, 14 ¶ 47, 12-13 ¶ 42, 12 ¶ 41, 16 ¶ 57, 17

¶ 60, 20 ¶ 81. On July 28, 2021, despite learning that Cline could resume working

full-time without restriction and despite receiving a request from Cline for

reinstatement or re-employment, Employer declined to offer him continued

employment. App. at 10 ¶ 30. Employer did so for the same reasons that had motivated it to terminate his employment on May 3, 2021. App. at 14 ¶ 47, 14-15 ¶¶ 49-50.

As the result of his termination, Cline has suffered financial harm, notwithstanding the fact that he subsequently secured employment in California as a perfusionist. App. at 15 ¶ 51, 17 ¶ 61, 10 ¶ 32. The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. App. at 7 ¶ 11.

From the date of his injury (March 27, 2021), until date when he was released to work without restrictions (July 28, 2021), Cline had physical impairments that substantially limited his major life activity of working. App. at 12 ¶ 42, 134. His physical impairments were neither transitory nor minor. App. at 12 ¶ 40 and n. 1. When Employer made the decision to discharge Cline, the expected duration of the impairments was more than six (6) months. App. at 12 ¶ 40.

In the alternative, Employer "erroneously" regarded Cline as having a long term or permanent inability to work. App. at 12 ¶ 41. In deciding to terminate Cline, Employer "erroneously" believed that his impairment in working would be protracted or permanent. App. at 12 ¶ 41. A reasonable accommodation was available to Employer: granting Cline paid or unpaid leave for a reasonable period of time and forbearance of termination during the period. App. at 12-13 ¶ 42.

Employer made no attempt to find a reasonable accommodation, because Employer assumed or believed that Cline's impairments could not be reasonably accommodated or was simply unwilling to accommodate his impairments. App. at 12 ¶ 41, 12-13 ¶ 42, 14 ¶ 48, 14-15 ¶ 49.

The sole factor, the primary factor, the determinative or determining factor, or a significant motivating factor in Employer's decision to terminate Cline, and in its decision not to reinstate or re-hire him, was his actual physical impairments that substantially limited one of his major life activities, his record of having such impairments, and being regarded as having a disability. App. at 14 ¶ 47. The non-transitory and non-minor character of his physical impairments are an alternative factual basis for his OADA disability-discrimination claims. App. at 16 ¶ 57 n. 2.

At the time of his termination, Cline was sixty-one (61) years old. App. at 16 ¶ 57. Cline was the only employee who was terminated by Employer in 2021. App. at 10 ¶ 31.

When Employer made the decision to terminate Cline, Employer had recently hired or was in the process of hiring two (2) individuals as perfusionists, each of whom was far younger than Cline, and each of whom was far less qualified and far less experienced than Cline. App. at 16 ¶ 58. Employer replaced Cline with one or both of these perfusionists. App. at 16 ¶ 59. One or both of them filled the

position that had become vacant due to Cline's termination. App. at 16 ¶ 59. Employer offered a false explanation for Cline's termination. App. at 9 ¶ 26.

The sole factor, the primary factor, the determinative or determining factor, or a significant motivating factor in Employer's decision to terminate Cline and its decision not to reinstate or re-hire him was the fact that he was sixty-one (61) years old. App. at 16 ¶ 57, 17 ¶ 60.

## SUMMARY OF THE ARGUMENTS

Cline does not dispute that his claim under the Rehabilitation Act is governed by the same standards as those applicable to claims brought under the Americans With Disabilities Act ("ADA"). Similarly, Cline does not dispute that his claim under the disability-discrimination provisions of the OADA is governed by the same standards as those applicable to claims brought under the ADA. In addition, Cline does not dispute that his claim under the age-discrimination provisions of the OADA is governed by the same standards as those applicable to claims brought under the Age Discrimination in Employment Act ("ADEA").

The district court erred in holding that because Cline alleged that the expected duration of his inability to work was more than 6 months, he was foreclosed from alleging that a reasonable period of job-protected leave (*i.e.* less than 6 months) was available as an accommodation. Cline agrees with the district court's view that if the expected duration of the leave necessary to accommodate

him exceeded 6 months, there would have been no "reasonable" accommodation available and that, as a result, he would not have been "an otherwise qualified" individual.

Cline does not dispute that job-protected leave for more than 6 months is unreasonable *per se*, but respectfully submits that he pleaded the "non-transitory" (*i.e.* more than 6 months) duration of his impairment only as an alternative to his allegation that a "reasonable" period of job-protected leave was available as an alternative to termination (*i.e.* that he could have returned to work in fewer than 6 months). His allegation that the expected duration of his impairment was greater than 6 months was made as part of his alternative claim that he had been the victim of "regarded as" discrimination.

The district court held that Cline is not permitted to allege inconsistent facts, *i.e.* alleging that the expected duration of his impairment was less than 6 months ("reasonable" period of leave) and that the expected duration of his impairment exceeded 6 months ("unreasonable" period of leave). Notwithstanding the obvious inconsistency of these allegations, Cline respectfully submits that, under the circumstances, Fed.R.Civ.P. 8(d)(2)-(3) counsels that his claims should not be dismissed.

In addition, the district court erred in holding that Cline could not maintain an OADA claim for age-discrimination, in light of his alternative claim that he had

been discharged "solely" because of his disability. App. at 14 ¶ 47, 16 ¶ 57. The district court reasoned that Cline's age could not have been the "determinative" factor in Employer's decision to terminate him if the Employer's "sole" reason for doing so was his disability.

Cline acknowledges that the alternative reasons he has posited for Employer's decision are inconsistent, and that if he was terminated because of his disability, he could not have been terminated "because of" his age, *i.e.* his age could not have been "the determinative factor" in the decision to terminate him. Cline respectfully submits, however, that he was entitled under Rule 8 to plead that either disability or age played the decisive role in Employer's decision, and that upon a sufficient showing at trial, he would be entitled to recover under one, but not both, of his claims.

Finally, the district court erred in holding that Cline's factual allegations of age-discrimination do not plausibly support an inference that his age was the determinative factor in Employer's decision.

**ARGUMENT**

**– Standard of Review –**

This court reviews *de novo* a district court's grant of a 12(b)(6) motion to dismiss. <u>Johnson v. Reyna</u>, ___ F.4th ___, 2023 U.S. App. LEXIS 605, * 8 (10th Cir. January 11, 2023).

## – Disability Discrimination –

### Fed.R.Civ.P. 8(d) authorizes Cline to plead inconsistent facts about the expected duration of his impairment.

"Section 504 of the Rehabilitation Act provides that 'no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.'" <u>Cohon ex rel. Bass v. New Mexico</u>, 646 F.3d 717, 725 (10th Cir. 2011) (quoting 29 U.S.C. § 794(a)). To state a *prima facie* case for discrimination under section 504, plaintiff must show (1) that he is a disabled individual under the Rehabilitation Act; (2) that he is "otherwise qualified" apart from his handicap, "*i.e.*, with or without reasonable accommodation, [he] could perform the job's essential functions;" (3) that his employer took an adverse action on account of his disability; and (4) that the program or activity in question receives federal financial assistance. *Id.*.

The ADA defines disability as:

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment . . . .

42 U.S.C. § 12102(1). Impairments that are "transitory and minor" may not be used to support a "regarded as" claim of disability discrimination under paragraph (1)(C), and an impairment is "transitory" if it has an actual or expected duration of six months or less. 42 U.S.C. § 12102(3)(B).

"The Rehabilitation Act and the ADA provide relief only to disabled persons who are 'otherwise qualified' to perform the functions of the job." Wilkerson v. Shinseki, 606 F.3d 1256, 1263 (10th Cir. 2010) (citing 29 U.S.C. § 794(a)). A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Adair v. City of Muskogee, 823 F.3d 1297, 1307 (10th Cir. 2016)

This court has held that "an employee who isn't capable of working for so long [more than 6 months] isn't an employee capable of performing a job's essential functions—and that requiring an employer to keep a job open for so long doesn't qualify as a reasonable accommodation." Hwang v. Kansas State Univ., 753 F.3d 1159, 1161 (10th Cir. 2014). In Hwang, plaintiff sought more than six months leave from her employer, and alleged discrimination based on the employer's failure to accommodate her request. Because the leave she sought was an unreasonable accommodation, it meant that she could not "perform the essential functions of her job" and, therefore, she was not "otherwise qualified." *Id.*

Section 1557 of the ACA prohibits certain discrimination by entities that receive federal financial assistance. 42 U.S.C. § 18116. The ACA adopts the relevant provisions of the Rehabilitation Act:

> Except as otherwise provided for in this title . . . , an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 . . . be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, . . . . The enforcement mechanisms provided for and available under . . . section 504 . . . shall apply for purposes of violations of this subsection.

42 U.S.C. § 18116(a).

Courts use the same analytical framework for a claim under the ACA as they use for a claim under the Rehabilitation Act. *See* Francois v. Our Lady of the Lake Hosp., Inc., 8 F.4th 370, 378 (5th Cir. 2021) ("For disability-discrimination claims, the ACA incorporates the substantive analytical framework of the [Rehabilitation Act]."); Doe v. BlueCross BlueShield of Tennessee, Inc., 926 F.3d 235, 239 (6th Cir. 2019) ("[T]he Affordable Care Act picks up the standard of care for showing a violation of § 504 [of the Rehabilitation Act].").

The OADA prohibits termination because of disability: "It is a discriminatory practice for an employer [t]o fail or refuse to hire, to discharge, or otherwise to discriminate against an individual with respect to compensation or the terms, conditions, privileges, or responsibilities of employment, because of…disability…." 25 O.S. § 1302(A)(1). The OADA defines "individual with a

disability" as "a person who has a physical or mental impairment which substantially limits one or more of such person's major life activities, has a record of such an impairment or is regarded as having such an impairment." 25 O.S. § 1301(4).

Under Rule 8, a complaint must contain enough facts to state a claim to relief that is plausible on its face, and the factual allegations must be enough to raise a right to relief above the speculative level. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). For the purpose of deciding a motion to dismiss, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the claimant. *Id.* Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

Construing all allegations of the amended complaint in the light most favorable to Cline, he has pleaded alternatively that "paid or unpaid leave for a reasonable period of time" was available to Employer as an accommodation. App. at 12-13 ¶ 42. Well before the filing of Cline's complaint, this court established that job-protected leave for more than six (6) months is *per se* unreasonable. *See*, Robert v. Bd. of County Comm'rs, 691 F.3d 1211, 1218 (10th Cir. 2012); Boykin v. ATC/VanCom of Colo., L.P., 247 F.3d 1061, 1064-1065 (10th Cir. 2001);

Hwang, *supra*, at 1161-1162. In alleging that he could have been accommodated successfully by receiving leave for "a reasonable period of time," Cline is stating that leave of a limited duration (*i.e.* up to six months) would have enabled him to recover.

Cline alleges alternatively that a period longer than 6 months would have been required, but alleges also that "Employer *erroneously* regarded Cline as having a *long-term* or permanent inability to work…" App. at 12 ¶ 41 (emphasis added) and that "Employer *erroneously* believed that his impairment in working…would be *protracted* or permanent…." App. at 12 ¶ 41 (emphasis added).

In the second paragraph following the allegation that "the expected duration of the impairments was more than six (6) months," Cline alleges, "*In the alternative,*…. A reasonable accommodation was available to Employer: granting Cline paid or unpaid leave for a *reasonable* period of time and forbearance of termination during the period." App. at 12-13 ¶ 42 (emphasis added).

The district court noted that Cline had pleaded these conflicting facts in the alternative, but held that he was not entitled to do so. App. at 137 n. 4 ("While plaintiff may plead alternative legal theories, he may not plead alternative sets of facts.").

This court has addressed whether Rule 8 authorizes a pleader to allege contradictory facts. "Indeed, Fed.R.Civ.P. 8(d) specifically allows for the pleading of inconsistent claims and inconsistent facts." United States v. Roe, 913 F.3d 1285, 1300 n. 21 (10th Cir. 2019).

The principle affirmed in Roe note 21 has been relied upon by district courts in this circuit. *See*, *e.g.*, Cella v. Mobichord, Inc., 2020 U.S. Dist. LEXIS 13983, * 28 (D. Utah January 27, 2020) (citing note 21; plaintiff permitted to plead contradictory motives for his termination); Bruce v. Kelly, 2021 U.S. Dist. LEXIS 179379, * 71 n. 8 (D. Kan. September 21, 2021) (quoting note 21; permitting plaintiff to allege that the State executive who forced him to resign was acting within the scope of his employment when he did so and that the executive was acting outside the scope of his employment when he did so.); Dean v. Wright Medical Technology, Inc., 593 F. Supp. 3d 1086, 1102 (D. Colo. 2022) (quoting note 21; permitting plaintiff to allege that a particular defect is the result of a manufacturing error and that the defect "is inherent in the design of the product itself"); Escano v. RCI LLC, 2022 U.S. Dist. LEXIS 213384, * 23 (D.N.M. November 28, 2022) (quoting note 21; permitting plaintiff to allege that the employees of one defendant made illegal calls and that the employees of a co-defendant made the calls), *adopted by* Escano v. RCI LLC, 2023 U.S. Dist. LEXIS 1450 (D.N.M. January 4, 2023).

Citing Rule 8, this court reversed a district court's decision to disallow the pleading of contradictory facts by a civil-rights plaintiff. <u>Kikumura v. Osagie</u>, 461 F.3d 1269, 1296 (10th Cir. 2006), *abrogated in part by* <u>Twombly</u>, *supra*, at 560-563, 570. In <u>Smith v. Cashland, Inc.</u>, 193 F.3d 1158 (10th Cir. 1999), this court reversed a district court decision precluding the defendant employer from alleging that the plaintiff had resigned and that she had been terminated. *Id.* at 1161.

In <u>Burke v. Holdman</u>, 750 Fed. Appx. 616 (10th Cir. 2018), this court affirmed the district court's denial of leave to amend, because the plaintiff had waited too long to request leave. This court noted that the plaintiff would have been permitted to plead that the defendant physician was an employee of a particular hospital and that the physician was not an employee of the hospital. *Id*. at 624 n. 8.

In <u>Smith v. Cashland, Inc.</u>, *supra*, at 1161, this court cited <u>Champlin v. Oklahoma Furniture Mfg. Co.</u>, 324 F.2d 74, 76 (10th Cir. 1963) (permitting defendant manufacturer to deny that it had made the defective chair while alleging that after the chair left its factory, the design had been altered).

In the case at bar, Cline should have been allowed to maintain inconsistent factual allegations about the expected duration of his impairment. The "inconsistency" features of Rule 8 are especially applicable to Cline's unique circumstances. On May 3, 2021, when Esau and McKeon announced to Ms.

Pardini that they were terminating Cline's employment, he was still in ICU, intubated, and heavily sedated (sleeping 20 hours a day). App. at 8-9 ¶ 24. At the time when Cline's termination was announced, he had been in ICU for only five (5) weeks (March 27, 2021, through May 3, 2021). App. at 8 ¶ 22, 9 ¶ 26.

Notwithstanding Cline's allegation that a "reasonable" period of leave would have enabled him to recover, the district court held that Cline was bound by his alternative allegation that the expected duration of his incapacity exceeded 6 months. When Cline filed the complaint in this action, he knew what the actual duration of his inability to work had been, but he did not know what physicians would have opined if they had been asked before May 3, 2021, to disclose the "expected duration" of his incapacity.

The actual period of Cline's inability to work was four (4) months from the date of his injury. If Employer had inquired about how long Cline would remain unable to work, the objective projection might have been that he could resume work in fewer than six (6) months from the date he was injured. Less than 90 days from the date when he was terminated (May 3, 2021), Cline became able to resume work as a full-time perfusionist without restriction. App. at 10 ¶ 29. A projection of

recovery within 3 months, made on May 3, 2021, would have been objectively

reasonable.[2]

## – Age Discrimination –

**The district court erred in foreclosing Cline from maintaining an age-discrimination claim as an alternative to his disability-discrimination claim, and in finding that his age-related factual allegations are insufficient to state a plausible claim.**

The OADA prohibits employers from discriminating against employees. 25

O.S. §§ 1101-1350. Analysis of an OADA claim for age-discrimination is the same

as the one applicable to an ADEA claim. Bennett v. Windstream Communications,

Inc., 792 F. 3d 1261, 1269 (10th Cir. 2015).

The OADA prohibits termination of employment because of age:

It is a discriminatory practice for an employer [t]o fail or refuse to hire, to discharge, or otherwise to discriminate against an individual with respect to compensation or the terms, conditions, privileges or responsibilities of employment, because of…age….

25 O.S. § 1302(A)(1).

After reciting certain facts alleged by Cline in support of his age-

discrimination claim, the district court reached the following conclusion:

The amended complaint, however, alleges that plaintiff's disability was the determinative factor in his termination. There may, of course, be multiple factors that lead to a plaintiff's termination but, to allege

---

[2] As of May 3, 2021, Cline was making progress toward recovery. On that date, he was released from ICU and transferred to a rehabilitation facility. App. at 10 ¶ 27. Within 5 weeks after transfer, he was released to home. App. at 10 ¶ 28. Six weeks later he was medically cleared to work without restriction. App. at 10 ¶ 29.

age-discrimination as one of them, plaintiff's age must be a "but for" factor. Nothing in the plaintiff's amended complaint satisfies that requirement or demonstrates the causal connection between plaintiff's age and his termination. Plaintiff must allege facts that support an inference that his age was a factor the [*sic*] contributed to the decision to terminate him. The facts in the amended complaint allege that plaintiff was terminated because of his inability to perform his duties as a perfusionist due to his disability.

App. at 141.

The final sentence in the above quotation ("The facts in the amended complaint allege that plaintiff was terminated because of his inability to perform his duties as a perfusionist due to his disability.") create an impression that the district court believed Cline's claim for age-discrimination to be foreclosed by his alternative claim for disability-discrimination. If the district court did view Cline's assertion of a disability-discrimination claim as an insurmountable barrier to maintaining his alternative age-discrimination claim, it was error to base the dismissal on that inconsistency. Rule 8(d)(2)-(3). <u>Sylvia v. Wisler</u>, 875 F.3d 1307, 1321 (10th Cir. 2017). If the inconsistency that concerned the district court arises from Cline's allegation that his disability was the "sole" factor in his termination, the authorities cited *supra* address the role of Rule 8 in pleading inconsistent facts.

On the other hand, the district court seems to have based its dismissal, at least in part, on a conclusion that Cline's age-discrimination claim lacks plausibility because his age-related factual allegations do not support an inference that his age was the deciding factor in Employer's decision. The district court

stated that Cline's pleaded facts "fail to support an inference that age was the 'factor that made a difference' in his termination." App. at 141. The district court also stated, "Nothing in plaintiff's amended complaint satisfies [the requirement that age must be a "but for" factor] or *demonstrates the causal connection* between plaintiff's age and his termination." App. at 141 (emphasis added).

It is hardly surprising that Cline cannot identify with certainty the motive behind Employer's decision to terminate him. Prior to his injury in 2021, he had been an exemplary employee, and there had been no indication that his job might be in jeopardy. App. at 8 ¶ 21, 9 ¶¶ 25-26. Neither Esau nor McKeon alerted Cline or Ms. Pardini that they were considering termination of his employment. When they told Ms. Pardini that he was being terminated, she was "shocked." App. at 9 ¶ 26.

In the amended complaint, Cline alleges virtually all the relevant facts about the termination-decision that are known by him. The amended complaint alleges that Cline was the only person terminated in 2021, two "far younger" and "far less qualified and far less experienced" perfusionists were being hired by Employer, and one of them replaced him. App. at 16 ¶¶ 58-59.[3]

---

[3] Cline alleges that Employer "was in the process of hiring" the much younger individuals. App. at 16 ¶ 58. If so, that could mean that even before Cline was injured, Employer had decided to replace him because of his age.

The district court did not mention one fact alleged by Cline in the amended complaint: when Esau and McKeon announced to Ms. Pardini that they were terminating him, they lied about the reason for the termination. They told Ms. Pardini that Employer's financial condition necessitated his termination, but their explanation was false. App. at 9 ¶ 26.

The fact that an employer fabricates a reason for terminating an individual is circumstantial evidence that the employer was motivated by an unlawful animus or relied on an impermissible stereotype. "[I]t is permissible for the fact finder to infer the ultimate fact of discrimination from the falsity of the employer's explanation." Miller v. Eby Realty Group LLC, 396 F.3d 1105, 1111 (10th Cir. 2005) (citation omitted). "[S]uch an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt." Id. (citation omitted). See, also, Stroup v. United Airlines, Inc. 26 F.4th 1147, 1159-1162 (10th Cir. 2022) (affirming denial of JMOL motion in age-discrimination case where the falsity of the defendant's explanation for terminating plaintiffs was an important factor in establishing a causal connection between age and termination).

In establishing a causal connection between his age and the termination of his employment, Cline must rely on circumstantial evidence. His factual allegations reflect that necessity.

Cline is not privy to additional facts at this time, but the factual allegations he pleaded, albeit in the nature of circumstantial evidence, suffice to support an inference of a causal connection between his age and Employer's decision. "A plaintiff can prove age discrimination with direct or circumstantial evidence." Mueggenborg v. Nortek Air Solutions, LLC, 2021 U.S. App. LEXIS 30860, at * 5 (10th Cir. October 15, 2021) (unpublished). This court has observed that the *prima facie* test in an ADEA action is intended to be neither exacting nor rigid. Frappied v. Affinity Gaming Black Hawk, LLC, 966 F.3d 1038, 1056 (10th Cir. 2020).

In the case at bar, the amended complaint alleges facts which, if true, support an inference that Cline's termination was caused by the fact that he was 61 years old, and that Employer preferred to employ much younger perfusionists. The amended complaint states a plausible claim for relief under the age-discrimination provisions of the OADA.

## CONCLUSION

Cline's pleading of inconsistent facts and alternative theories of liability should not deprive him of an opportunity to discover medical evidence of "expected duration" and to explore the motives of Employer's decision-makers.

The district court's Opinion and Order should be reversed, the Judgment of Dismissal should be vacated, and this matter should be remanded for further proceedings.

**STATEMENT OF COUNSEL AS TO ORAL ARGUMENT**

Counsel believes that oral argument is necessary, because this appeal

addresses important principles of pleading that are frequently disputed.

Respectfully submitted,

CHARLES CLINE, Plaintiff – Appellant

By:  *s/ Donald M. Bingham*
Donald M. Bingham, OBA #794
RIGGS, ABNEY, NEAL, TURPEN, ORBISON &
LEWIS
502 W. 6th St.
Tulsa, OK 74119
Telephone: (918) 587-3161
Facsimile: (918) 587-9708
don_bingham@riggsabney.com
ATTORNEY FOR PLAINTIFF – APPELLANT

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**
Certificate of Compliance With Type-Volume Limit,
Typeface Requirements, and Type Style Requirements

1. This document complies with the word limit of Fed.R.App.P. 32(a)(7)(B)(i) because, excluding the parts of the documents exempted by Fed.R.App.P. 32(f):

    [X] this document contains 6,757 words.

2. This document complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because:

    [X] this document has been prepared in a proportionally spaced typeface using Microsoft Word 2019 MSO in 14-point font Times New Roman.

Date: January 23, 2023

        *s/Donald M. Bingham*
        Donald M. Bingham, OBA #794
        RIGGS, ABNEY, NEAL, TURPEN, ORBISON & LEWIS
        502 W. 6th St.
        Tulsa, OK 74119
        Telephone: (918) 587-3161
        Facsimile: (918) 587-9708
        don_bingham@riggsabney.com

        ATTORNEY FOR PLAINTIFF – APPELLANT

EXHIBIT 1

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHARLES CLINE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 22-CV-0314-CVE-CDL |
| | ) | |
| CLINICAL PERFUSION SYSTEMS, INC., | ) | |
| ET AL. | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Before the Court are defendants Clinical Perfusion Systems, Inc. (CPS), Kevin Esau, and Tyler McKeon's motion to dismiss the amended complaint (Dkt. # 11), plaintiff Charles Cline's response (Dkt. # 19), and defendants' reply (Dkt. # 20). This case arises from plaintiff, a former employee of defendants, alleging in an amended complaint violations of the Rehabilitation Act (count 1), the Oklahoma Anti-Discrimination Act (count 2), the Affordable Care Act (count 3), and breach of contract (count 4) against defendant Clinical Perfusion Systems, Inc. Dkt. # 8. In addition, plaintiff alleges tortious interference (count 5) and outrageous conduct (count 6) against defendants Esau and McKeon. Id.

**I.**

On July 19, 2022, plaintiff filed his original complaint (Dkt. # 2), in this Court. On July 28, 2022, plaintiff filed an amended complaint (Dkt. # 8), as a matter of right pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure. The original complaint alleged the same counts 1-6 that are recited above. The amended complaint changed only some of the facts describing plaintiff's medical

condition and treatment.[1]  On August 11, 2022, defendants moved to dismiss all claims of the amended complaint pursuant to Fed R. Civ. P. 12(b)(6).[2]  Dkt. # 11, at 6.

The following facts are taken from the amended complaint:  plaintiff is a perfusionist (Dkt. # 8, at 3), which is a "licensed medical professional who is a member of a cardiovascular surgical team."  Dkt. # 8, at 2.  Perfusionists "operate[] . . . heart-lung machine[s], and during surgery maintain[] blood flow to the patient's tissues and regulate[] levels of oxygen and carbon dioxide in the blood."  Id.  Defendant CPS hired plaintiff as a perfusionist in 2017, where we worked until he was terminated on May 3, 2021.  Id. at 3, 4.  Defendants Esau and McKeon are perfusionists who own CPS.  Id. at 3.

On March 27, 2021, plaintiff lost consciousness while driving, due to a sudden onset of hypotension.  Id. at 3.  Emergency medical personnel responded to the scene and performed emergency care, which included intubating plaintiff, and then transported plaintiff to Saint Francis Hospital in Tulsa.  Id. at 3.  The intubation caused "profound damage to [plaintiff's] throat," which "necessitated treatment in ICU from March 27, 2021, until May 3, 2021, followed by in-patient rehabilitation at an . . . [LTAC] until June 11, 2021, when he was discharged."  Id.  Due to the

---

[1]  The amended complaint adds details about plaintiff's treatment and ailments.  Dkt. # 8, at 3, 4.  It also clarifies the nature of the long term acute care (LTAC), the rehabilitation facility where plaintiff received treatment (id. at 3), the treatment received while at LTAC (id. at 5), and when plaintiff was discharged from that facility (id. at 5).  The only other substantive modification is that the amended complaint alleges, as part of the OADA claim, that plaintiff's physical impairments were "non-transitory" and "non-minor"  Id. at 11.  This assertion had already been stated as part of the Rehabilitation Act claim, which states that plaintiff's "physical impairments were neither transitory nor minor."  Id. at 7; Dkt. # 2, at 6.

[2]  Defendants also move to dismiss plaintiff's amended complaint pursuant to Fed. R. Civ. P. 12(b)(3); however, defendants' brief in support addresses only failure to state a claim deficiencies under Rule 12(b)(6), and not improper venue under Rule 12(b)(3).  Therefore, the Court considers defendants' motion under only Rule 12(b)(6).

necessary treatment of his damaged throat, plaintiff could breathe only with the assistance of a ventilator attached to a tracheostomy cannula for most of his stay in the ICU.  Id. at 3.  While in the ICU, plaintiff also used a Foley catheter and had a gastric feeding tube, and his kidneys became compromised for which he underwent dialysis for approximately six weeks.  Id.  Plaintiff was "heavily sedated and slept up to twenty [] hours each day."  Id.  Because of the "condition of his throat, kidneys, and other organs, [plaintiff] could not speak, eat . . . , or care for himself.  Id.

Defendants Esau and McKeon "observed plaintiff in [the] ICU," spoke with plaintiff's wife, Nicole Pardini, and "formed certain opinions about his condition."  Id. at 4.  On May 3, 2021, defendants Esau and McKeon informed Pardini by telephone that plaintiff was being terminated due to CPS's financial condition.  Id. at 4.  "When [CPS] made the decision to discharge Cline, the expected duration of the impairments was more than six (6) months."  Id. at 7.  Pardini asked the defendants "whether they would agree to hold [plaintiff's] job open until he recovered," but defendants Esau and McKeon declined her request.  Id. at 4.  Plaintiff "was the only employee who was terminated by [CPS] in 2021."  Id. at 5.  When CPS decided to terminate plaintiff, it "had recently hired or was in the process of hiring two (2) individuals as perfusionists, each of whom was far younger . . . and . . . far less qualified and far less experienced than [plaintiff.]"  Id. at 11.  One or both of these new hires replaced plaintiff at CPS.  Id.

That same day, May 3, 2021, plaintiff was transferred to LTCA where he "received rehabilitation services and continued dialysis."  Id. at 5.  While at LTCA, plaintiff continued to receive extensive services and was "unable to work or care for himself."  Id. at 5.  Plaintiff was discharged from LTCA on June 11, 2021, but continued to use his "tracheostomy cannula, his gastric tube, and his catheter" "for a few weeks."  Id. at 5.  On July 28, 2021, plaintiff's physician "released

3

[plaintiff] to return to work as a perfusionist on a full-time basis without restriction." Id. at 5. "Shortly after" being released to work, plaintiff asked defendant McKeon for reinstatement and "even offered to work at a lesser position," but plaintiff's request was denied. Id. at 5.

Plaintiff subsequently obtained employment as a perfusionist in California. Id. at 5. Despite ongoing difficulty and pain when speaking or swallowing, plaintiff "is able to work full-time as a perfusionist." Id. at 5-6.

## II.

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee Cnty. Bd. Of Cnty. Comm'rs, 263

4

F.3d 1151, 1154-55 (10th Cir. 2001).   "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

**III.**

Rehabilitation Act Claim (Count One)

Plaintiff's first claim for relief (count one) is that CPS failed to accommodate his disability and that he was terminated because of his disability in violation of the Rehabilitation Act. Dkt. # 8, at 9.   Defendants argue that plaintiff cannot state a plausible claim for disability discrimination under the Rehabilitation Act, because he cannot show that he was an "otherwise qualified" person with a disability. Dkt. # 11, at 7.

"Section 504 of the Rehabilitation Act provides that 'no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.'"   Cohon ex rel. Bass v. New Mexico, 646 F.3d 717, 725 (10th Cir. 2011) (quoting 29 U.S.C. § 794(a)).   To state a prima facie case for discrimination under section 504, plaintiff must show (1) that he is a disabled individual under the Rehabilitation Act; (2) that he is "otherwise qualified" apart from his handicap, "i.e., with or without reasonable accommodation, [he] could perform the job's essential functions;" (3) that his employer took an adverse action on account of his disability; and (4) that the program or activity in question receives federal financial assistance. Id.; see also Cummings v. Norton, 393 F.3d 1186, 1189 (10th Cir. 2005).   Cases decided under section 504 of the Rehabilitation Act are applicable to cases brought under the ADA and vice versa. Roberts v. Progressive Indep., Inc., 183 F.3d 1215, 1220 n.4 (10th Cir. 1999) (internal quotations

5

omitted); see also Wilkerson v. Shinseki, 606 F.3d 1256, 1262 (10th Cir. 2010) (stating "[w]e apply the standards from the American with Disabilities Act in analyzing a Rehabilitation Act claim").

The ADA defines disability as:

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment . . . .

42 U.S.C. § 12102(1). Impairments that are "transitory and minor" may not be used to support a "regarded as" claim of disability discrimination under paragraph (1)(C), and an impairment is transitory if it has an actual or expected duration of six months or less. 42 U.S.C. § 12102(3)(B). It is plaintiff's burden to establish that he has an actual or perceived disability. Steele v. Thiokol Corp., 241 F.3d 1248, 1253 (10th Cir. 2001).

A person is disabled if he has "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). Major life activities include, but are not limited to: "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). "A major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." 42 U.S.C. § 12102(2)(B).

In this case, the amended complaint alleges that plaintiff had physical impairments that substantially limited his ability to perform several major life activities and that CPS "regarded Cline

as having" such "a long-term or permanent" impairment.  Dkt. # 8, at 7.  Due to the "condition of

his throat, kidneys, and other organs," plaintiff "could not speak, eat . . . , or care for himself" while

in the ICU.  Id. at 4.  Plaintiff "remained unable to work or care for himself" while being treated at

LTCA.  Id. at 5.  Throughout the period, plaintiff's physical impairments limited his ability to care

for himself, eat, and speak, and major bodily functions were compromised, including functions of

the digestive, bladder, and respiratory systems.  Id. at 3-4, 5, 7.  In addition, the amended complaint

alleges that "[w]hen [CPS] made the decision to discharge Cline, the expected duration of the

impairments was more than six (6) months."  Id. at 7.

The Court finds that the facts alleged in the amended complaint establish the first element

of a prima facie case of disability discrimination:  plaintiff alleges that he was a "disabled individual"

under 42 U.S.C. § 12102(1)(A) Act because he had physical impairments that substantially limited

his ability to perform several major life activities.[3]  Indeed, defendants do not contest that plaintiff

was "disabled" under the first element, and the parties' arguments focus on the second element:

whether plaintiff was qualified, with or without an accommodation, to perform the essential

functions of his job.

"The Rehabilitation Act and the ADA provide relief only to disabled persons who are

'otherwise qualified' to perform the functions of the job."  Wilkerson, 606 F.3d at 1263 (citing 29

U.S.C. § 794(a)).  A "qualified individual" is "an individual who, with or without reasonable

accommodation, can perform the essential functions of the employment position that such individual

holds or desires."  Adair v. City of Muskogee, 823 F.3d 1297, 1307 (10th Cir. 2016)

---

[3]      Plaintiff also alleged a "regarded as" basis for finding he had a "disability" under 42 U.S.C.
§ 12102(1)(C).  The first element of a prima facie case is alleged under either definition.

The plausibility of the alleged disability discrimination under the Rehabilitation Act hinges on whether plaintiff was "otherwise qualified" at the time of the alleged discrimination.  The Court must engage in a two step analysis to determine if plaintiff is a "qualified individual."  First, the Court must determine if the plaintiff "can perform the essential functions of the job, i.e., functions that bear more than a marginal relationship to the job at issue."  Hawkins v. Schwan's Home Service, Inc., 778 F.3d 877, 887 (10th Cir. 2015).  The second step of the analysis comes into play if the employee is unable to perform an essential job function, and the Court must consider whether there is any reasonable accommodation that would allow the employee to perform that job function.  Id. at 888.

As to step one, given plaintiff's extensive physical impairments, there is no dispute that plaintiff could not have "perform[ed] the essential functions of the job" without an accommodation. A perfusionist "operates a heart-lung machine, and during surgery maintains blood flow to the patient's tissues and regulates levels of oxygen and carbon dioxide in the blood."  Dkt. # 8, at 2. They play a critical life saving role and must be able to perform in the operating theater.  Plaintiff could not have performed the job while suffering from the physical impairments alleged.  Plaintiff acknowledges as much and asserts that he could have performed "initially with reasonable accommodation," and identifies "job-protected leave" as the accommodation "until he became fully recovered."  Dkt. # 19, at 10 (citing Dkt. # 8, at 6).  Therefore, the Court considers whether, given the facts alleged in the amended complaint, job-protected leave was a reasonable accommodation that could have been offered to plaintiff to allow him to perform all of the essential functions of his job.

The determination of whether a requested accommodation is reasonable is specific to each case, and a court must consider the nature of the employee's disability and the requirements of the job. Punt v. Kelly Servs., 862 F.3d 1040, 1050 (10th Cir. 2017). Paid or unpaid leave for a reasonable period of time may qualify as a reasonable accommodation. See E.E.O.C. v. C.R. England, Inc., 644 F.3d 1028, 1048-49 (10th Cir. 2011) ("We have held that, under the appropriate circumstances, '[a]n allowance of time for medical care or treatment may constitute a reasonable accommodation.'" (quoting Rascon v. USW. Commc'ns, Inc., 143 F.3d 1324, 1333-34 (10th Cir.1998))); see also Hudson v. MCI Telecommc'ns Corp., 87 F.3d 1167, 1169 (10th Cir.1996) ("This court agrees with plaintiff that a reasonable allowance of time for medical care and treatment may, in appropriate circumstances, constitute a reasonable accommodation."). In cases where an employee requests leave as an accommodation, the employee has the burden to produce evidence as to the expected duration of the requested leave to establish when the employee is likely to resume his regular duties. Hudson, 87 F.3d at 1169. "Without an expected duration of an impairment, an employer cannot determine whether an employee will be able to perform the essential functions of the job in the near future and therefore whether the leave request is a 'reasonable' accommodation." Punt, 862 F.3d at 1051 (quoting Cisneros v. Wilson, 226 F.3d 1113, 1129 (10th Cir. 2000)). At this stage, the Court accepts the allegations in the amended complaint regarding the expected duration of plaintiff's impairments as true.

The Tenth Circuit has held that "an employee who isn't capable of working for [six months] isn't an employee capable of performing a job's essential functions—and that requiring an employer to keep a job open for so long doesn't qualify as a reasonable accommodation." Hwang v. Kansas State Univ., 753 F.3d 1159, 1161 (10th Cir. 2014). In Hwang, plaintiff sought more than six months

leave from her employer, and alleged discrimination based on the employer's failure to accommodate the request. Because the leave sought was an unreasonable accommodation, it meant that plaintiff could not "perform the essential functions of her job" and, therefore, the court concluded that she was not "otherwise qualified." Id.

In this case, the amended complaint states that "[w]hen [CPS] made the decision to discharge Cline, the expected duration of the impairments was more than six (6) months."[4] Dkt. # 8, at 7. Therefore, any request for an accommodation of job-protected leave would have been for that length of time and, so, unreasonable under Hwang.

In his response brief, plaintiff asserts "[d]efendants did not give Mr. Cline the opportunity to estimate (or have his physicians estimate) when he would become able to resume work." Dkt. # 19, at 10. However, this statement contradicts the fact alleged in the amended complaint that "[w]hen [CPS] made the decision to discharge Cline, the expected duration of the impairments was more than six (6) months." Dkt. # 8, at 7. The Court accepts the facts alleged in the amended complaint as true, not arguments contained in a response brief. According to the Tenth Circuit, six months of leave is not a reasonable accommodation per se. See Hwang, 753 F.3d at 1161. Because of the expected duration of his disability, plaintiff's proposed accommodation of job-protected leave

---

[4]    Plaintiff argues that he pleads these allegations "pursuant to his 'regarded as' theory" and they "are made in the alternative only." Dkt. # 19, at 9. While plaintiff may plead alternative legal theories, he may not plead alternative sets of facts. The Court accepts as true all factual allegations in the amended complaint, including that the "expected duration of [plaintiff's physical] impairments was more than six (6) months." Dkt. # 8, at 7.

would have been for more than six months because of the expected duration of his disability and, therefore, it was not a reasonable accommodation.[5]

For a discrimination claim to survive, plaintiff must allege facts that he was "otherwise qualified" for the position, with or without a reasonable accommodation. Plaintiff required an accommodation, but the facts alleged in the amended complaint preclude the existence of any reasonable accommodation. Therefore, plaintiff could not have been "otherwise qualified" at the time of the alleged discriminatory activity. Because plaintiff cannot state a claim with these facts, the first claim of relief in the amended complaint should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

Oklahoma Anti-Discrimination Act (Count Two)

Plaintiff's second claim for relief (count two) alleges that he was terminated because of his disability and age in violation of the Oklahoma Anti-Discrimination Act (OADA). Dkt. # 8, at 6. Defendants argue that plaintiff cannot state a plausible claim for relief under the OADA for either his disability or age claims. (Dkt. # 11, at 7, 12).

First, the OADA prohibits employers from discriminating against people on the basis of disability. OKLA. STAT. tit. 25, § 1302(A)(1); §1901 (providing a private cause of action for

---

[5]     Plaintiff also argues that his claim should survive the motion to dismiss at this stage because CPS failed to engage in an interactive process to determine whether a reasonable accommodation was available. Dkt. # 19, at 10. An employer's failure to engage in the interactive process is relevant when there is a question as to the existence of a reasonable accommodation. See Dansie v. Union Pacific R.R. Co., 42 F.4th 1184, 1194 n.2 (10thCir. 2022) (stating that "an employee cannot maintain a failure to accommodate claim based solely on an employer's failure to engage in the interactive process," but "[w]hen an employer does not engage in the interactive process" it may be more difficult "to establish the absence of a disputed fact as to the existence of a reasonable accommodation"). CPS's failure to engage in the process is not relevant here, where there was no reasonable accommodation per se because the expected duration of leave was more than six months.

disability discrimination).  Defendants argue that plaintiff's OADA claim fails for the same reasons as his Rehabilitation Act claim.  Dkt. # 11, at 10.  The Tenth Circuit has determined that a plaintiff's OADA claim fails if his federal discrimination claims fail.  See Barzellone v. City of Tulsa, No. 99-5088, 2000 WL 339213, at *5 (10th Cir. Mar. 31, 2000) (unpublished);[6] Anthony v. City of Clinton, No. 98-6188, 1999 WL 390927, at *8 n.6 (10th Cir. June 15, 1999) (unpublished); LeFlore v. Flint Indus., Inc., No. 98-5024, 1999 WL 89281, at *3 n.4 (10th Cir. Feb. 23, 1999) (unpublished) (affirming district court's holding - unchallenged on appeal - that the legal analysis for plaintiff's OADA claim was the same as his ADEA claim); Wilson v. State Ins. Fund ex rel. Okla., No. 96-6100, 1997 WL 12929, at *2 (10th Cir. Jan. 15, 1997) (unpublished) ("[f]or essentially the same reasons set forth in our analysis of the ADA claim, plaintiff's state statutory claims also fail"); see also Stanley v. White Swan, Inc., No. CIV-00-1291-F, 2002 WL 32061753, at *11(W.D. Okla. Sep. 26, 2002) ("[b]ecause the protections provided by [the OADA] are co-extensive with the protections provided by federal law under the ADA, plaintiff's claim of handicap discrimination in violation of state law fails for the same reasons her federal claim fails").  Therefore, plaintiff's OADA disability discrimination claim fails to state a claim for the same reasons as his Rehabilitation Act claim.

Defendants also argue that plaintiff's OADA age discrimination claim fails to state a claim for relief.  Dkt. # 11, at 12.  The OADA also prohibits employers from discriminating against people on the basis of age.  OKLA. STAT. tit. 25, § 1302(A)(1).  When a plaintiff fails to establish a prima facie case under the ADEA, he fails to establish a claim of age discrimination under the OADA. Bennett v. Windstream Commc'ns, Inc., 792 F.3d 1261, 1269 (10th Cir. 2015); LeFlore, 1999 WL

---

[6]     Unpublished decisions are not precedential, but may be cited for their persuasive value.  See Fed. R. App. 32.1: 10th Cir. R. 32.1.

89281, at *3 n.4;[7] see also OKLA. STAT. tit. 25, § 1350(F) ( "The defending party may allege any defense that is available under . . . the Age Discrimination in Employment Act . . . ."). Therefore, ADEA jurisprudence governs OADA claims as well.

Generally, to establish a prima facie case of age discrimination, a plaintiff must show: (1) that he is within the protected age group; (2) that he suffered an adverse employment action; (3) that he was qualified for the position; and (4) he was treated less favorably than others not in the protected class. Jones v. Oklahoma City Public Schools, 617 F.3d 1273, 1279 (10th Cir. 2010); Stroup v. United Airlines, Inc., 26 F.4th 1147, 1160 n.9 (10th Cir. 2022). The context of a claim and the nature of the adverse action alleged may impact the required prima facie elements and so, alternatively, the Tenth Circuit has also used a similar three-part articulation of the discrimination test: (1) that he is a member of a protected class, (2) that he suffered an adverse employment action, and (3) the challenged action occurred under circumstances giving rise to an inference of discrimination. Bennett, 792 F.3d at 1266; E.E.O.C. v. PVNF, L.L.C., 487 F.3d 790, 800 (10th Cir. 2007). The mixed-motive analysis established in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), does not apply to claims under the ADEA, and a plaintiff asserting an age discrimination claim under the ADEA retains the "burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action." Gross v. FBL Financial Servs., Inc., 557 U.S. 167, 177 (2009). The Tenth Circuit has found that Gross is consistent with existing Tenth Circuit precedent, and a plaintiff asserting an age discrimination claim has the burden to prove that "age was the factor that

---

[7]     This and other unpublished opinions are cited for their persuasive value. See 10th Cir. R. 32.1(A).

made a difference," even if age was not the sole motivating factor for an employer's decision. Jones, 617 F.3d at 1277.

"[T]he 12(b)(6) standard does not require that [p]laintiff establish a prima facie case in h[is] complaint, [but] the elements of each alleged cause of action help to determine whether [p]laintiff has set forth a plausible claim." Khalik v. United Air Lines, 671 F.3d 1188, 1192 (10th Cir. 2012). While plaintiff's alleged facts may support a prima facie case using either articulation of the elements, they fail to support an inference that age was the "factor that made a difference" in his termination. Plaintiff was: (1) sixty-one (61) at the time of the events and therefore in a protected class (above the age of forty (40)); (2) terminated from employment; and (3) qualified to be a perfusionist. Dkt. # 8, at 11. He alleges that he was the only person terminated that year, while two "far younger" and "far less qualified and far less experienced" employees were hired to replace him. Id. at 5, 11. The amended complaint, however, alleges that plaintiff's disability was the determinative factor in his termination. There may, of course, be multiple factors that lead to a plaintiff's termination but, to allege age discrimination as one of them, plaintiff's age must be a "but for" factor. Nothing in plaintiff's amended complaint satisfies that requirement or demonstrates the causal connection between plaintiff's age and his termination. Plaintiff must allege facts that support an inference that his age was a factor the contributed to the decision to terminate him. The facts in the amended complaint allege that plaintiff was terminated because of his inability to perform his duties as a perfusionist due to his disability.

The Court finds that plaintiff has not alleged a plausible claim of age discrimination, because the facts alleged do not create an inference that age was a but-for factor in the decision to terminate

14

his employment.  Because plaintiff cannot state a claim for relief under these facts, plaintiff's second

claim for relief in the amended complaint should be dismissed with prejudice.

Affordable Care Act Claim (Count Three)

Plaintiff's third claim for relief (count three) is that CPS discriminated against him because

of his disability in violation of the Affordable Care Act (ACA).  Dkt. # 8, at 12-14.  Defendants

argue that plaintiff cannot state a plausible claim for relief under the ACA.  Dkt. # 11, at 12.

Section 1557 of the ACA prohibits certain discrimination by entities that receive federal

financial assistance.  42 U.S.C. § 18116.  Plaintiff argues this prohibition applies to workplace

discrimination because of disability.  Dkt. # 8, at 13.  The ACA adopts the relevant provisions of the

Rehabilitation Act:

> Except as otherwise provided for in this title . . . , an individual shall not, on the ground
> prohibited under . . . section 794 of Title 29 [section 504 of the Rehabilitation Act], . . . be
> subjected to discrimination under, any health program or activity, any part of which is
> receiving Federal financial assistance, including credits, subsidies, or contracts of insurance,
> . . . .  The enforcement mechanisms provided for and available under . . . [section 504 of the
> Rehabilitation Act] . . . shall apply for purposes of violations of this subsection.

42 U.S.C. § 18116(a).  Defendants argue that the applicability of the ACA's nondiscrimination

provision to employment discrimination "is at best unclear," and cite to regulations that limit its

scope.  Dkt. # 11, at 11.

The Court need not decide that question here, however, because, assuming the ACA's

nondiscrimination provision does apply to this case, plaintiff fails to state a plausible claim.  The

Court uses the same analytical framework for a claim for relief under the ACA as it does for the

Rehabilitation Act.  See Francois v. Our Lady of the Lake Hosp., Inc., 8 F.4th 370, 378 (5th Cir.

2021) ("For disability-discrimination claims, the ACA incorporates the substantive analytical

framework of the [Rehabilitation Act.]"); Doe v. BlueCross BlueShield of Tennessee, Inc., 926 F.3d 235, 239 (6th Cir. 2019) ("[T]he Affordable Care Act picks up the standard of care for showing a violation of § 504 [of the Rehabilitation Act.]").  Since plaintiff cannot allege facts to state a claim for relief under the Rehabilitation Act, plaintiff also cannot state a claim for relief under the ACA. Therefore, plaintiff's third claim of relief should also be dismissed with prejudice.

Breach of Contract (Count Four)

Plaintiff's fourth claim for relief (count four) is that CPS's termination of Cline breached their contract.  The employment contract between plaintiff and CPS contained a terminable at will provision, permitting termination of the contract by either party with 30 days written notice.  Dkt. # 11-1, at 3.  Plaintiff argues his termination was done in bad faith, which breaches the implied covenant of good faith and fair dealing.  Defendant argues that plaintiff fails to state a plausible claim for breach of contract.  Dkt. # 11, at 15.

The Oklahoma Supreme Court has considered a principal's bad faith invocation of a terminable at will clause.  Hall v. Farmers Ins. Exch., 713 P.2d 1027, 1029 (Okla. 1985) ("The primary issue . . . is whether a party to a contract which is terminable at will, upon notice, may be held liable for damages if such termination is done in bad faith.").  While the court held that "[t]he implied covenant of good faith extends to a covenant not to wrongfully resort to the termination-at-will clause," id. at 1030, damages were limited to the "fruits of his contract."  Id. at 1031.

Hall is a unique case that has been limited to its facts, and the Oklahoma Supreme Court has since clarified its holding to be that "a principal may not resort to the termination-at-will clause of an agency agreement for the purpose of depriving its agent of the 'fruits of his labors.'"  Blanton v.

16

<u>Hous. Auth. of City of Norman</u>, 794 P.2d 412, 417 (Okla. 1990).  <u>See</u> <u>also</u> <u>Hinson v. Cameron</u>, 742

P.2d 549, 552 (Okla.1987) (stating "<u>Hall</u> . . . stands for the rule that an agent may recover from the

principal when the latter has, in bad faith, deprived him of the fruit of his own labor").  <u>Hall</u> did not

create a "new cause of action in favor of an at-will employee discharged in 'bad faith,'" <u>Hinson</u>, 742

P.2d at 552, and the <u>Hinson</u> court expressly declined to impose upon the employer a legal duty not

to terminate an at-will employee in bad faith."  <u>Id.</u> at 554.

The fruits of one's own labor is limited to what the plaintiff already earned.  While the court

in <u>Hall</u> permitted damages for future income, it was based only on properly anticipated renewals for

policies that plaintiff had already sold and secured.  <u>See</u> <u>Hall</u>, 713 P.2d at 1031.  Damages for future,

unearned income are not permitted:

> In <u>Hall</u>, the agent sought to recover the true fruits of his labor, commissions owed to him
> based on his pre-termination employment. [Plaintiff] is clearly seeking to recover for future,
> unearned income. Therefore, the holding in <u>Hall</u> is not applicable to this case and we will not
> extend such a remedy to the case where one seeks to recover future, unearned income.

<u>Blanton</u>, 794 P.2d at 417; see also, <u>Hinson,</u> 742 P.2d at 552 (finding the case distinguishable from

<u>Hall</u> because "Hinson [did] not claim[] the [employer] deprived her of any earned income").

Plaintiff argues that, unlike the plaintiffs in <u>Blanton</u> or <u>Hinson</u>, he was not an employee at

will but a contract employee and therefore those decisions are inapplicable.  However, <u>Hall</u> was also

a contract employee, but the contract had a terminable at will clause, just like the one in Cline's

contract with CPS.  Even if plaintiff is not an employee at will, in the termination of employment

contracts, Oklahoma courts have applied the same rule and held that "recovery is allowed for the bad

faith breach of the employment contract only upon a showing of some 'intent to wrongfully deprive

[a contracting party] of the fruits of his contract.'" Robinson v. Southerland, 123 P.3d 35, 44 (Okla. Civ. App. 2005) (quoting Hall, 713 P.2d at 1030).

Plaintiff does not claim CPS deprived him of any earned income in this case. Instead, plaintiff asserts the "fruits of his contract" include "his right to continue earning compensation and to continue enjoying his chosen profession" (Dkt. # 19, at 15), but those "fruits" are not like any that Oklahoma has recognized for breach of an employment contract that is terminable at will upon notice. Therefore, plaintiff cannot state a plausible claim for breach of contract under these facts and plaintiff's breach of contract claim should be dismissed with prejudice.

Tortious Interference (Count Five)

Plaintiff's fifth claim for relief (count five) is that defendants Esau and McKeon tortiously interfered with plaintiff's employment contract with CPS. Dkt. # 8, at 15. Defendants argue that plaintiff fails to state a claim because defendants Esau and McKeon were, as representatives of CPS, parties to the contract and, therefore, could not have committed tortious interference. Dkt. # 11, at 17.

Under Oklahoma law, a tortious interference claim has four elements: "(1) the interference was with an existing contractual or business right; (2) such interference was malicious and wrongful; (3) the interference was neither justified, privileged nor excusable; and (4) the interference proximately caused damage." Wilspec Techs., Inc. v. DunAn Holding Grp., Co., 204 P.3d 69, 74 (Okla. 2009) (citing Mac Adjustment, Inc. v. Prop. Loss Res. Bureau, 595 P.2d 427, 428 (Okla. 1979)). "Additionally, the claim is viable only if the interferor is not a party to the contract or business relationship." Wilspec Techs., Inc., 204 P.3d at 74 (citing Voiles v. Santa Fe Minerals, Inc., 911 P.2d 1205, 1209 (Okla. 1996)).

18

"A cause of action for wrongful interference with contract can arise only when one who is not a party to a contract interferes with that contract by convincing one of the contracting parties to breach its terms." Ray v. Am. Nat. Bank & Tr. Co. of Sapulpa, 894 P.2d 1056, 1060 (Okla. 1994). An agent "cannot be liable for wrongfully interfering with a contract if [the agent] was acting in a representative capacity for a party to that contract." Voiles, 911 P.2d at 1210 (citing Ray, 894 P.2d at 1060). If Esau and McKeon acted as agents to CPS, then, as a matter of law, they could not have interfered with the contract.[8]

Esau and McKeon own CPS and hold all of CPS's shares of stock. Dkt. # 8, at 3. When they terminated Cline, they did so on behalf of CPS, and so acted as agents of CPS. Because defendants Esau and McKeon acted as CPS's agents when they terminated Cline's employment, they were, in their representative capacity of CPS, party to the contract. Therefore, there is no plausible claim for tortious interference.

Plaintiff argues that, because the corporation is a separate legal entity, its shareholders are third parties that can tortiously interfere with its contracts. Dkt. # 19, at 24-25. That may be in some cases but it still requires a finding that the alleged interferor is not a party or not representing the corporation. See Positive Cashflow, Inc. v. Response Team 1 Holdings, LLC, No. 118,946, slip op. at 15 (OK Civ. App. June 6, 2022) (upholding liability against a parent corporation only after finding that the defendant "was not a party to [its subsidiary corporation's] contracts, and there was

---

[8]     Plaintiff argues that an agent can be liable for tortious interference "if the agent was acting against the interests of the principal (employer) and in furtherance of the agent's own interests." Dkt. # 19, at 26 (citing Martin v. Johnson, 975 P.2d 889 (Okla. 1998)). Martin addressed rogue agents and whether there is personal liability "if the agent was acting against the interests of the principal and in furtherance of interests of the agent." Martin, 975 P.2d at 896. It is inapplicable to this case, where, as owners of CPS, Esau and McKeon's interests are aligned with CPS's.

no evidence that [defendant parent corporation] was acting in a <u>representative capacity</u> for [the subsidiary corporation]") (emphasis in original).  As stated, Esau and McKeon were acting for CPS in their representative capacity as the owners and operators of CPS and so they could not tortiously interfere with CPS's contract with plaintiff.  Because plaintiff cannot state a claim for relief under these facts, plaintiff's tortious interference claim against defendants Esau and McKeon should be dismissed with prejudice.

<u>Intentional Infliction of Emotional Distress (Count Six)</u>

Plaintiff's sixth claim for relief (count six) is that, under the circumstances, defendants' conduct was "so extreme and outrageous as to go beyond all possible bounds of decency and would be considered atrocious and utterly intolerable in a civilized society" that it constitutes outrageous conduct, or intentional infliction of emotional distress (IIED).  Dkt. # 8, at 16.  Defendants argue that plaintiff's claim should be dismissed because the "conduct alleged does not rise to the level of extreme and outrageous conduct necessary for an IIED claim."  Dkt. # 11, at 14.

Oklahoma courts have recognized a cause of action for intentional infliction of emotional distress, also known as the tort of outrage.  <u>See</u> <u>Gaylord Entertainment Co. v. Thompson</u>, 958 P.2d 128, 149 (Okla. 1998).  The action is governed by the narrow standards laid out in the Restatement Second of Torts, § 46.  <u>Id.</u>  In <u>Breeden v. League Services Corp.</u>, 575 P.2d 1374 (Okla. 1978), the Oklahoma Supreme Court explained:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'  The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

Id. at 1376.  To state a claim, a plaintiff must allege that "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." Schovanec v. Archdiocese of Oklahoma City, 188 P.3d 158, 175 (Okla. 2008) (quoting Computer Publications, Inc. v. Welton, 49 P.3d 732, 735 (Okla. 2002)).  Under Oklahoma law, the trial court must assume a "gatekeeper role" and make an initial determination that the defendant's conduct "may be reasonably regarded as sufficiently extreme and outrageous to meet the Restatement § 46 standards." Trentadue v. United States, 397 F.3d 840, 856 n.7 (10th Cir. 2005) (applying Oklahoma law).  If reasonable persons could reach differing conclusions in the assessment of the disputed facts, the Court should submit the claim to the jury to determine whether the defendant's conduct could result in liability.  Id. The Court is to make a similar threshold determination with regard to the fourth prong, the presence of severe emotional distress.  Id.

In cases arising out of the workplace, Oklahoma appellate courts have found that a defendant engaged in extreme and outrageous conduct only when that defendant intentionally and persistently engaged in a course of conduct that harmed the plaintiff.  See Computer Publications, 49 P.3d at 736 (claim should have been submitted to a jury when plaintiff presented evidence that harassment lasted more than two years and caused plaintiff to quit her job, move, and repeatedly change phone numbers); Miner v. Mid-America Door Co., 68 P.3d 212 (Okla. Civ. App. 2002) (employer's alleged failure to reassign the plaintiff after learning of workplace harassment, even if unreasonable, was not extreme and outrageous); Gabler v. Holder & Smith, Inc., 11 P.3d 1269 (Okla. Civ. App. 2000) (noting that workplace harassment rarely rises to the level of extreme and outrageous conduct); Mirzaie v. Smith Cogeneration, Inc., 962 P.2d 678 (Okla. Civ. App. 1998) (employer's conduct was

not extreme and outrageous when, <u>inter alia</u>, the plaintiff's manager made derogatory sexual remarks about the plaintiff, woke plaintiff up in the middle of the night to do unnecessary work, and terminated him two hours before his wedding); <u>Zahorsky v. Community Nat'l Bank of Alva</u>, 883 P.2d 198 (Okla. Civ. App. 1994) (employer not liable for intentional infliction of emotional distress when an employee forced the plaintiff to have sex with him and employer failed to fire the employee, even though the employer allegedly knew about the conduct).

Plaintiff has not alleged that defendant engaged in extreme and outrageous conduct, and defendants' motion to dismiss on plaintiff's claim of intentional infliction of emotional distress should be granted. There is no allegation that defendants engaged in a pattern of consistent and severe conduct. Instead, the alleged "outrageous" conduct is simply that, after plaintiff had spent more than five weeks in the ICU and was being transferred to an in-patient rehabilitation facility, defendant terminated plaintiff's employment when it was expected that plaintiff would not be able to work for at least six more months. The facts of this case do not rise to the level of extreme and outrageous conduct under Oklahoma law, and plaintiff's response to defendant's motion for summary judgment makes no argument as to the viability of this claim.[9] Under the facts alleged, Esau and

---

[9] Plaintiff asks the Court to follow cases from other jurisdictions which permitted IIED claims against employers; however, the facts of those cases are clearly distinguishable from this one. In <u>Stock v. Graham</u>, 125 N.S. 564 (N.M. App. 1998), the employer fired plaintiff at her hospital bedside. The court allowed it to continue because more information was needed about the nature of the interaction between defendant and plaintiff at the hospital, which did not occur in this case. In <u>Richardson v. Valley Asphalt, Inc.</u>, 109 F. Supp. 2d 1332 (D. Utah 2000), the employer's alleged discriminatory conduct could form the basis of an IIED claim "if performed with the requisite intent." <u>Id.</u> at 1340. However, plaintiff's amended complaint fails to allege facts to support that defendants had the requisite intent for an IIED claim when they terminated him.

22

McKeon's conduct was not "extreme and outrageous."  Therefore, plaintiff's claim for outrageous conduct should be dismissed with prejudice.

**IT IS THEREFORE ORDERED** that defendants' motion to dismiss (Dkt. # 11) is **granted**. All six of plaintiff's claims for relief are dismissed with prejudice because plaintiff cannot state any of the claims under the facts alleged.  A separate judgment of dismissal is entered herewith.

**DATED** this 28th day of October, 2022.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

23

EXHIBIT 2

**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **CHARLES CLINE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 22-CV-0314-CVE-CDL** |
| | ) | |
| **CLINICAL PERFUSION SYSTEMS, INC.,** | ) | |
| **ET AL.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## JUDGMENT OF DISMISSAL

This matter has come before the Court for consideration and an opinion and order dismissing

plaintiff's case with prejudice for failure to state a claim has been entered.  A judgment of dismissal

of plaintiff's claims is hereby entered.

**DATED** this 28th day of October, 2022.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE